COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-079-CV

 

 

EX PARTE RIGOBERTO RODRIGUEZ                                                        

 

 

                                              ------------

 

            FROM
THE 323RD DISTRICT COURT OF TARRANT
COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In two issues, Appellant
Rigoberto Rodriguez complains that the trial court erred by denying his
application for writ habeas corpus relief. 
We will affirm.

I. Factual and Procedural Background

At age fourteen, Rodriguez
was involved in a gang-related shooting. 
On April 13, 1994, a jury adjudicated Rodriguez, then at age fifteen,
delinquent of the offense of murder. 
Rodriguez did not appeal this determination.








After a hearing on February
10, 1997, Rodriguez was transferred from the Texas Youth Commission to the
Institutional Division of the Texas Department of Criminal Justice.  On May 19, 2005, eleven years after he was adjudicated
delinquent, Rodriguez filed an application for writ of habeas corpus, seeking
an out-of-time appeal.  He alleged in the
application that he was denied his right to appeal, effective assistance of
counsel on appeal, and that the trial court failed to instruct the jury on the
issue of sudden passion.  The crux of
Rodriguez=s complaint
at the habeas corpus hearing and now on appeal is that the trial court judge
erred by failing to admonish Rodriguez and his guardian, according to section
56.01 of the Texas Family Code, that he had a right to a court-appointed
attorney on appeal, thus depriving him of his right to appeal. Section 56.01 of
the Texas Family Code states in part that upon entering an appealable order
with regard to delinquent conduct of a juvenile, the trial court shall advise
the child and the child=s parent,
guardian, or guardian ad litem of the child=s right to appeal, representation by counsel on appeal, and the appointment
of an attorney for the appeal if an attorney cannot be obtained because of
indigency.  Tex. Fam. Code Ann. ' 54.03 (Vernon Supp. 2007), ' 56.01(c)B(e) (Vernon
2002).








The State argued in response
that there were no legal grounds to support the application and that Rodriguez
was barred by the doctrine of laches from obtaining habeas corpus relief.  At the conclusion of the hearing on the
application for writ of habeas corpus on September 8, 2005, the State argued
that Rodriguez had not shown by a preponderance of the evidence that the judge
had failed to admonish him and his family, and it again urged that Rodriguez
was barred from obtaining habeas corpus relief on the basis of laches.  The State then provided the trial court with
a copy of Ex parte Carrio to supplement its laches argument.  992 S.W.2d 486 (Tex. Crim. App. 1999). The trial court offered Rodriguez an opportunity to respond by letter
to the State=s laches
argument, but there is nothing in the record that shows whether Rodriguez ever
responded.  On January 19, 2007, the
trial court signed an order denying habeas corpus relief.[2]  The trial court did not specify a reason for
its denial or enter findings of fact and conclusions of law.

II. Section 56.01 Admonishments B Right to Appeal








In issues one and two,
Rodriguez argues that the trial court erred by denying his application for
habeas corpus relief because the judge at his adjudication trial did not afford
him the protections provided in section 56.01 of the Texas Family Code.[3]  See C‑‑‑‑ W‑‑‑‑
v. State, 738 S.W.2d 72, 73 (Tex. App.CDallas 1987, no writ) (AIt is obvious that the legislative intent in section 56.01 is to
protect the rights of the child.  In this
instance, the right to appeal is a fundamental right and the child
should be able to make an informed decision as to whether he wishes to appeal.@ (emphasis added)).  Rodriguez
testified that had he known he was entitled to a court-appointed attorney, he
might have filed a timely appeal.

A.     Laches








We first address whether
Rodriguez=s
application for habeas corpus relief should be barred by laches.  The doctrine of laches is defined as Aneglect to assert right or claim which, taken together with lapse of
time and other circumstances causing prejudice to an adverse party, operates as
a bar in a court of equity.@  Carrio, 992 S.W.2d at
487 n.2.  In Carrio, the court of
criminal appeals stated that the doctrine of laches is a theory that may, and
should be, employed in the determination of whether to grant relief in cases
filed under article 11.07 of the Texas Code of Criminal Procedure.  Id. at 488.  Article 11.07 establishes the procedures for
an application for writ of habeas corpus in which the applicant seeks relief
from a felony judgment imposing a penalty other than death.  Tex.
Code Crim. Proc. Ann. art. 11.07 (Vernon Supp. 2007).  This is a civil case to which article 11.07
does not apply;[4]
however, because the nature of Rodriguez=s application is sufficiently similar to those made under article
11.07, we will apply the three-part test set forth in Carrio to this
case.  See id.








When asserting that relief
should be denied on the basis of laches, it is the burden of the State to (1)
make a particularized showing of prejudice, (2) show that the prejudice was
caused by the applicant having filed a late application, and (3) show that the
applicant has not acted with reasonable diligence as a matter of law.[5]
 Carrio, 992 S.W.2d at 488.  It is important to note that length of delay
alone will not constitute either unreasonableness of delay or prejudice; the
doctrine of laches concerns prejudice, not mere passage of time.  Id. at 488, 488 n.3.

The State argues that it has
been prejudiced by the eleven-year delay between the adjudication of
delinquency and the filing of the application for writ of habeas corpus because
it was unable to properly respond to Rodriguez=s claim.  The State specifically
points out that no record of the trial transcript was found and that the court
reporter during Rodriguez=s trial had
already disposed of the audiotapes of the trial.  The court reporter testified that he kept the
audiotapes until approximately six months before the hearing, which he claimed
was longer than he was required to by law.








Additionally, the State
argues that the defense counsel at Rodriguez=s trial did not have a clear recollection of whether the trial court
judge admonished Rodriguez and his auntCRodriguez=s guardian
at the time of trialCconcerning
Rodriguez=s rights on
appeal.[6]  Counsel stated, however, that he suspects
that the trial court judge gave admonishments regarding Rodriguez=s rights on appeal because the trial court gave counsel two documents
for Rodriguez to sign and state whether he wanted to appeal the case.  Counsel testified that Rodriguez signed one
of the documents on the day he was adjudicated delinquent and stated that he
did not want to appeal the verdict.[7]  Rodriguez also testified at the hearing that
he signed the document stating that he did not wish to appeal the case.  Rodriguez stated that he had no money to hire
an attorney at that time and that counsel told him that there was no reason to
appeal.








The State argues further that
Rodriguez was unable to accurately recall the exact circumstances concerning
the admonishments.  Rodriguez first
stated that the trial court judge did not admonish him on his rights on appeal,
but later on cross-examination, Rodriguez said, AI don=t know if heCif he didCif he did or
didn=t tell me.@  It is not entirely clear from the record if
Rodriguez was referring to counsel or the judge when he said, Ahe.@  In any event, when asked again whether the
judge gave admonishments to him and his family, Rodriguez stated that A[i]t could have happened.@

Based on the State=s argument set forth above, we hold that the State has not made a
particularized showing of prejudice.  The
State relies mainly on the absence of a trial transcript and on Rodriguez=s and counsel=s inability
to recall whether the trial court admonished Rodriguez and his aunt.  However, if the State chooses to rely on the
absence of the trial record, it must show that the substance of the record is
unavailable from other sources.  See
Walters v. Scott, 21 F.3d 683, 688 (5th Cir. 1994);[8]
see also Ex parte Elliff, No. WR-64223-01, 2006 WL 1545499, at *1
(Tex. Crim. App. June 7, 2006) (order not designated for publication) (holding
that the applicant=s habeas
application filed twenty three years after he was convicted was not barred by
laches in part because the assistant district attorney was still available to
address claims made in the applicant=s case). 








The State may have shown that
counsel was now unable to remember the exact events of the adjudication trial
and that Rodriguez gave conflicting testimony regarding the trial court=s actions, but it has not shown that the information was unavailable
from other sources.  For example, the
State has not shown that the prosecutors of the case were unavailable or unable
to testify regarding the issue of admonishments.  Further, the State elicited testimony that it
is the regular course of practice for the Tarrant County Juvenile Probation
Department to have a probation officer in the courtroom at all times when there
are proceedings taking place in a juvenile case.  The State, however, failed to show whether
the probation officer assigned to Rodriguez=s case was available to testify.








The State has also not
sufficiently shown that the trial judge was unable to testify.  It argues that the trial judge now suffers
from Aage related memory problems,@ but the only testimony to that effect came from the court reporter
who stated that he had heard that the judge now has memory problems but that he
had not noticed it himself.  This general
allegation by the State and the ambiguous testimony regarding the allegation
are not sufficient to prove the requisite particularized prejudice.  But even taking that allegation as true, the
State has failed to prove when exactly the judge began suffering from such
memory problems.  Thus, if the judge=s memory began to diminish shortly after the adjudication trial,
Rodriguez=s delay in
filing his application would not have caused that particularized
prejudice.  See Elliff,
2006 WL 1545499, at *1 (noting that because the district attorney in office at
the time of the trial died shortly after the trial, the State would have been
equally prejudiced in its ability to respond if the applicant had filed his
claim twenty years earlier).

The State has not shown that
the information regarding the admonishments, presumably on the trial record,
could not have been reproduced from other sources.  Because the State has not made a
particularized showing of prejudice, and in the case of the judge=s alleged memory problems that Rodriguez=s delay caused the prejudice, we reject its argument that habeas
corpus relief is barred by laches and move on to the merits of Rodriguez=s appeal.

B.     Admonishments to Rodriguez and Guardian      








Rodriguez claims that the
trial court failed to admonish him and his aunt that he had a right to a
court-appointed attorney on appeal.  It
was his burden at the hearing to prove these allegations by a preponderance of
the evidence.  See Ex parte Thomas,
906 S.W.2d 22, 24 (Tex. Crim. App. 1995); Ex parte Bruce, 112 S.W.3d
635, 639 (Tex. App.CFort Worth
2003, pet. dism=d, untimely
filed). Absent a clear abuse of discretion, we accept the trial court=s decision whether to grant the relief requested in a habeas corpus
application.  Bruce, 112 S.W.3d at
639.  When, as in this case, the trial
court does not issue findings of fact with its ruling, we must affirm if we can
uphold the trial court=s order on
any legal theory supported by the evidence. 
See Worford v. Stampler, 801 S.W.2d 108, 109 (Tex. 1990);
Gonzalez v. State, 148 S.W.3d 702, 706 (Tex. App.CAustin 2004, pet. ref=d).

The record of the hearing
contains conflicting testimony on whether the trial court gave admonishments
and on the exact details of what occurred after the jury read the verdict.  We note that Rodriguez=s sister, who was present at the trial, testified that the aunt did
not receive information from the judge about the right to appeal.  We also note that counsel testified that he
suspects that the judge gave admonishments in open court because the court gave
him two documents for Rodriguez to sign as notice to the court of Rodriguez=s intent to appeal.








Rodriguez relies heavily on
his aunt=s testimony to support his argument that the judge never discussed
with her Rodriguez=s rights on
appeal.  The aunt testified at trial and
in her affidavit in support of the application that the judge never directed a
word to her about the appeal.  In fact, Rodriguez=s aunt testified
that because she speaks only Spanish, the trial judge would have had to
communicate with her through an interpreter, which she claims he did not
do.  The supervisor for the Tarrant
County Juvenile Probation Department testified, however, that it is regular
practice and that the Department A[tries its] best@ to assign a
bilingual officer to families that do not speak English to Aassist and
facilitate in the comprehension of the system.@  The supervisor stated that it was also the
regular course of practice for the probation officer to be in the court room at
all times when there are proceedings in a juvenile=s case. Moreover,
the record shows that moments before she testified
that the judge did not communicate with her, the aunt stated that she did not
remember what happened after the verdict was read; she remembered only that she
left the court room.

As for Rodriguez=s testimony, he stated in his affidavit and at the hearing that the
trial court judge did not admonish him on his rights on appeal.  But on cross-examination, Rodriguez said, AI don=t know if heCif he didCif he did or
didn=t tell me.@  Eventually he stated that the judge Acould have@ admonished
him and his family.  Rodriguez agreed
that it was hard to remember what happened eleven years ago on the day of
adjudication.








Even though the State was
unable to prove that habeas corpus relief should be barred by laches, we
acknowledge that, in some circumstances, the applicant=s delay in seeking relief can prejudice the credibility of his
claim.  Ex parte Young, 479 S.W.2d
45, 46 (Tex. Crim. App. 1972).  Because
the record is no longer available, we are to rely solely on the memories of
four individuals that were present at the trial.  The testimony from these individuals is
conflicting, and in Rodriguez=s case, tainted with self-interest and the prospect of gaining his
freedom; thus, we cannot say that the trial court abused its discretion by
denying the relief sought in Rodriguez=s application for writ of habeas corpus.  We overrule both of Rodriguez=s issues.  See id at 47.

III. Conclusion

Having overruled both of
Rodriguez=s issues, we
affirm the trial court=s judgment. 

 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
B:  LIVINGSTON, DAUPHINOT, and HOLMAN,
JJ.

 

DELIVERED:  June 19, 2008

 











[1]See Tex.
R. App. P. 47.4.





[2]The juvenile docket states that the
trial court denied the application on September 12, 2005, but the trial court
officially signed the order denying relief on January 19, 2007.





[3]The State attempts to characterize
Rodriguez=s application as only a complaint
that the trial court violated the Texas Family Code and thus not a cognizable
ground for habeas corpus relief.  We note
that Rodriguez argues on appeal that Astrict adherence to the statutory rights of juveniles must
be observed@; however, Rodriguez also states on
appeal that because of the court=s error in failing to admonish him on his right to appeal
and Aassociated rights@ according to the Texas Family
Code, he was denied his right to appeal. 
Further, Rodriguez states in his application that the Aapplicant was denied the right of
appeal.@ Thus, we interpret his application
as a complaint that he was denied his right to appeal because of the trial
court=s alleged failure to admonish him
and his guardian, not merely that the trial court violated the Texas Family
Code.





[4]The
procedures in article 11.07 are available only after Afinal
conviction.@  See Tex.
Crim. Proc. Ann. art. 11.07; 
Ex parte Valle, 104 S.W.3d 888, 889 (Tex. Crim. App. 2003).  Juvenile adjudications are not Aconvictions@;
thus, all juvenile adjudications remain civil cases unless transferred to a
criminal court.  See Valle, 104
S.W.3d at 889B90.





[5]The court of criminal appeals
derived this three-part test from federal Rule 9(a) governing section 2254
federal cases and codifying the equitable doctrine of laches.  See Carrio, 992 S.W.2d at 487.  The Court noted that it was not prohibitive
that Texas did not have a statute or rule comparable to Rule 9(a) because
laches is an equitable common law doctrine. 
Id at 488.





[6]Defense
counsel specifically recalled that he twice discussed with Rodriguez his
rights on appeal, including that Rodriguez was entitled to a court-appointed
attorney and a free copy of the trial transcript.  Rodriguez testified that he did not recall
counsel telling him that he had a right to a court-appointed attorney.





[7]The
documents were never filed as part of the Clerk=s
Record at the adjudication trial.  The
documents were admitted as exhibits at the habeas corpus hearing although they
were not attached to the Reporter=s Record and are thus not
part of the appellate record.  The State does not argue on
appeal that the notice of appeal signed by Rodriguez is a binding waiver of
appeal.  See Tex. Fam. Code Ann. ' 51.09 (Vernon 2002) (waiver
of rights).





[8]In Carrio, the court of
criminal appeals cited Walters for authority that the type of prejudice
the State must show is prejudice in its ability to respond to the allegations
in the petition or application for habeas corpus.  992 S.W.2d at 488.