**Ex parte Danny Dean THOMAS aka Shozdijiji Shisinday.**

**No. 71929.**

Court of Criminal Appeals of Texas, En Banc.

June 7, 1995.

Rehearing Denied Sept. 13, 1995.

Dissenting Opinion by Judge Overstreet Sept. 13, 1995.

Eden Harrington, Austin, Jay Topkis, Steven C. Herzog, Gregory A. Clarick, New York City, for appellant.

John B. Holmes, Jr., Dist. Atty., and Roe Wilson, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

This is a post-conviction application for writ of habeas corpus filed pursuant to Article 11.07, V.A.C.C.P. Applicant was convicted of capital murder in cause number 346935 in the 180th District Court of Harris County, and after the jury affirmatively answered the special issues he was sentenced to death. Article 37.071, V.A.C.C.P. This Court affirmed applicant's conviction and sentence of death. *Thomas v. State*, 701 S.W.2d 653 (Tex.Cr.App.1985). Applicant's allegation contending that he was denied the right to represent himself before this Court, as well as his allegation contending that he was forcibly medicated, thus causing a deprivation of due process, a trial while applicant was incompetent without a separate hearing on competency, and ineffective assistance of counsel were filed and set by this Court in an order delivered October 3, 1994. Applicant's motion to stay execution pending disposition of this application was also granted in that same order.

■ Applicant first alleges that he was denied his right to represent himself on direct appeal. Applicant claims that our decision in *Hubbard v. State*, 739 S.W.2d 341 (Tex.Cr.App.1987), is controlling on this issue. In *Hubbard* the appellant had been "energetically flooding the courts with pro se motions since his conviction." *See Hubbard*, 739 S.W.2d at 343. We held that allowing the appellant to file his pro se briefs in that case would not unduly hamper the administration of justice based upon the unusual facts of the case and the delay already caused to that appellant. *Id.* at 345.

The record shows that in the instant case applicant was sentenced on March 19, 1982. Applicant's attorneys filed an appellate brief on December 11, 1984. On January 3, 1985, applicant for the first time asserted his desire to represent himself before this Court by filing a "Motion to Strike Counsel's Brief on Appeal".

■ The right of an accused to reject the services of counsel and instead represent himself extends beyond trial into the appellate process. *Webb v. State*, 533 S.W.2d 780, 784 (Tex.Cr.App.1976). However, it is incumbent upon an accused to clearly and unequivocally inform the trial court of his desire to prosecute his appeal without the aid of counsel. *Id.* at 786. The right of self-representation is not a license to capriciously upset the appellate timetable or to thwart the orderly and fair administration of justice. Allowing applicant untimely to assert his right of self-representation after nearly three years and only after he had read his appellate counsel's briefs would unduly hamper the administration of justice. *See Hubbard*, 739 S.W.2d at 343. Accordingly, applicant's first allegation is found to be without merit.

■ Applicant next alleges that he was forcibly medicated at trial thus causing a deprivation of due process, a trial while applicant was incompetent without a separate hearing on competency, as well as ineffective assistance of counsel. Citing *Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), applicant asserts that the State has failed to meet the three-part test[1] required by the United States Supreme Court in order forcibly to treat him with antipsychotic drugs.

In *Riggins*, Justice O'Connor, writing for the majority, said:

> "The record in this case *narrowly defines* the issues before us. The parties have indicated that once the District Court denied Riggins' motion to terminate use of the Mellaril, subsequent administration of the drug was involuntary. See, e.g., Brief for Petitioner 6 (medication was 'forced'); Brief for Respondent 14, 22, 28 (describing medication as 'unwanted,' 'over objection,' and 'compelled')." (emphasis added). *Riggins*, 504 U.S. at 133, 112 S.Ct. at 1814.

The threshold question must therefore be whether applicant was forcibly medicated.

The findings of fact and conclusions of law by the trial court reveal that prior to the applicant's trial he was transferred to the forensic unit of the Harris County Jail where he initially received Thorazine. Applicant later began receiving Prolixin at his own request[2]. The only evidence of a possible objection to applicant being medicated was defense counsel Ron Hayes' testimony at the evidentiary writ and recusal hearing. According to Hayes' court-ordered affidavit, defense counsel made a strategic trial decision to take an opposing stance regarding medicating the applicant regardless of the court's position and such stance was not predicated on any alleged incompetency of the applicant to stand trial. Defense counsel claims that an objection to applicant's being medicated during trial was made prior to voir dire, however, there is no evidence in the record of this objection.

■ The record in the case now before us clearly demonstrates that applicant failed to make a motion to terminate use of the medication or that he even lodged an objection to being medicated. The burden of proof in a writ of habeas corpus is on the applicant to prove by a preponderance of the evidence his factual allegations. *Ex parte Adams*, 768 S.W.2d 281 (Tex.Cr.App.1989). However, applicant fails to show anywhere in the record that he was forced to take the medication or that there was even an objection to his being medicated at trial. Since the record does not demonstrate that the applicant's treatment with antipsychotic drugs was involuntary, *Riggins* is inapplicable and applicant's due process contention is without merit. *See Riggins*, 504 U.S. at 133, 112 S.Ct. at 1814.

■ Applicant also contends that his "forced" medication rendered him incompetent to stand trial. The findings of the trial court reveal that two mental health practitioners found applicant competent before trial. Ron Hayes, one of applicant's defense attorneys, stated at the evidentiary hearing that applicant answered questions and

---

1. The applicant posits that the State must show that the treatment is (1) medically appropriate, (2) in response to a compelling State interest, and (3) the least restrictive means.

2. Apparently applicant was having difficulty taking the oral medication Thorazine so he requested a drug which could be injected.

seemed to understand them, gave his version of the events and discussed the facts of the offense, and was aware of the crime with which he was charged and what the possible results could be. As noted above, Hayes stated in his affidavit that it was trial strategy to take an opposing stance regarding how the trial court ruled on the continued medication of the applicant and that such stance *was not predicated on any alleged incompetency of the applicant to stand trial.* Co-counsel Charles Rice Young stated that he believed applicant was competent. The trial court also found that applicant was competent during his trial. The record supports the fact that there was no bona fide doubt as to applicant's competence to stand trial, and therefore the trial court was not required to conduct a separate hearing sua sponte. *Drope v. Missouri,* 420 U.S. 162, 173, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815; *Ex parte Johnston,* 587 S.W.2d 163, 165 (Tex.Cr.App.1979); *see also* Article 46.02, Section 2, V.A.C.C.P. Applicant's contentions that the "forced" medication rendered him incompetent at trial and the absence of a separate hearing on competency are without merit.

■ Finally applicant contends that his "forced" medication was the result of ineffective assistance of counsel. The record reveals that defense counsel argued during the guilt/innocence stage of trial that the applicant exhibited no psychotic activity because he was being treated with antipsychotic medication. The record also reveals that during the punishment phase of the trial defense counsel argued to the jury that they had seen the applicant while he was receiving medication and the medication obviated any future dangerousness. It is clear that the trial strategy of the defense was to use appellant's medication to their advantage. The trial court made a finding of fact that defense counsel was effective under the guidelines established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984). We agree, and therefore, applicant's final contention is found to be without merit.

Having found each of applicant's contentions without merit, we deny all relief, and applicant's motion to stay execution pending disposition of this application which was granted by this Court on October 3, 1994 is withdrawn.

OVERSTREET, J., dissents.

BAIRD, Judge, dissenting.

Applicant contends he was entitled to represent himself on direct appeal. Because the majority, in its rush to deny relief, ignores the record and controlling authority, I dissent.

**I.**

Applicant was convicted of capital murder and sentenced to death on March 19, 1982. Thereafter, the transcript and statement of facts were filed with this Court. Applicant's attorneys filed an appellate brief on December 11, 1984. Twenty-three days later, on January 3, 1985, applicant filed a "Motion to Strike Counsel's Brief on Appeal," and requested to proceed *pro se* on appeal. Four months later, on May 31, 1985, we overruled the motion. On August 12, 1985, over seven months after filing his motion to proceed *pro se,* applicant filed a *pro se* application for writ of habeas corpus. The Court affirmed applicant's conviction on December 18, 1985, addressing some, but not all, of the allegations in the habeas application. *Thomas v. State,* 701 S.W.2d 653 (Tex.Cr.App.1985).

**II.**

The right to self-representation is guaranteed by the Sixth Amendment. *Hathorn v. State,* 848 S.W.2d 101, 121 (Tex.Cr.App.1992); *and, Hawkins v. State,* 613 S.W.2d 720, 723 (Tex.Cr.App.1981). This right extends to the appellate process. *Webb v. State,* 533 S.W.2d 780 (Tex.Cr.App.1976). Applicant's decision to proceed *pro se* need not be "wise," only knowing and intelligent.[1]  *Hathorn,* 848

---

1. In *Hathorn,* we stated:
   It is well settled that a defendant has the right to prosecute his legal defense, both

through trial and appeal, on his own, without the aid of counsel. A defendant's choice of self representation need not be "wise" and, may

S.W.2d at 122–123. Generally, if a defendant's assertion of the right to proceed *pro se* on appeal was clear and unequivocal, the defendant is entitled to proceed *pro se*. *Id.,* 848 S.W.2d at 123.

The majority finds applicant failed to *timely* assert his right to self-representation as required by *Hubbard v. State,* 739 S.W.2d 341 (Tex.Cr.App.1987), and *Webb, supra.* The majority holds the administration of justice would have been unduly hampered by allowing applicant to proceed *pro se. Ante,* 906 S.W.2d at 23–24. But neither *Hubbard* nor *Webb* support the majority's holding. In *Webb,* the defendant's motion to proceed *pro se* was filed "long after his appointed counsel had filed an appellate brief on his behalf." Consequently, we held the assertion of the right to proceed *pro se* was untimely and would unduly hamper the administration of justice. *Webb,* 533 S.W.2d at 786. However, in *Hubbard,* the defendant asserted his right to proceed *pro se* fifty-five days after appointed counsel filed his brief. We held *Hubbard's* assertion of the right to proceed *pro se* was timely. *Hubbard,* 739 S.W.2d at 344. While *Hubbard* and *Webb* hold that a defendant's right to proceed *pro se* may be waived if not timely asserted, applicant's assertion of this right, just twenty-three days after the appellate brief was filed, was *not* untimely. *See, Ex parte Davis,* 818 S.W.2d 64, 68 (Tex.Cr.App.1991) (Case remanded to Court of Appeals to consider applicant's brief).

### III.

The majority fails to explain how allowing applicant to proceed *pro se* would unduly hamper the administration of justice. Indeed, neither the record nor our case law supports such a holding. Applicant's motion to proceed *pro se* was filed just twenty-three days after counsel's brief—well short of the fifty-five day period we approved in *Hub-*

*bard.* Twenty-three days is not a long period when we consider that it took this Court more than four months to rule on applicant's motion to proceed *pro se* and that eleven months passed from applicant's motion until our opinion was delivered.[2]

### IV.

The instant record contains no evidence that applicant's assertion of the right to proceed *pro se* was not timely or would have unduly hampered the administration of justice. Indeed, the record compels a finding that applicant's assertion of the right to proceed was timely, clear, and unequivocal. In such circumstances applicant has an absolute right to represent himself. *Hathorn, supra; and, Hawkins, supra.* When the record and case law is considered together, it becomes clear the majority holding is a transparent attempt to reach the desired result of denying relief. I refuse to participate in such a practice.

I would permit applicant to proceed *pro se* and order him to file his appellate brief within sixty days. I would dismiss his *Riggins* allegations without prejudice so that they may be raised in his brief. Because the majority fails to do so, I dissent.

CLINTON, J., joins this opinion.

OVERSTREET, Judge, dissenting on denial of applicant's motion for rehearing.

On June 7, 1995, this Court found each of applicant's contentions to be without merit and accordingly denied all relief. Ground one of applicant's motion for rehearing seeks rehearing on the issue of whether he was medicated against his will at trial in violation of his constitutional rights.

In our original opinion we concluded that the record "clearly demonstrates that applicant failed to make a motion to terminate use

---

ultimately be "to his own detriment." However, if his choice is a result of an informed decision and is both knowingly and intelligently made, he must be allowed to proceed pro se. *Hathorn,* 848 S.W.2d at 122–123.

**2.** Additionally, the majority's holding is weakened by this Court's opinion on direct appeal where we considered some of the allegations

raised in applicant's August 12, 1985, habeas petition. If allowing applicant to proceed on appeal *pro se* would have unduly hampered the administration of justice, then why were we able to consider and resolve some of applicant's habeas allegations in our original opinion? These allegations were filed seven months after appellant asserted his right to proceed *pro se!*

of the medication or that he even lodged an objection to being medicated" and that "applicant fails to show anywhere in the record that he was forced to take the medication or that there was even an objection to his being medicated at trial." *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex.Cr.App.1995). However, ground one of applicant's motion for rehearing avers that the trial court has found that he objected to the medication, that the State repeatedly conceded that he objected to the medication (in its answer to the petition for writ of habeas corpus, in its proposed findings of fact and conclusions of law, in its brief to this Court, and in its oral argument before this Court), and that his trial attorneys have testified post-trial that they objected at trial. He insists that while his objection to the medication does not appear in the trial record, "[such] absence does not alter the fact—a fact found by the trial court, conceded by the State and sworn to by two Texas attorneys—that [applicant] objected to his medication at trial." (Applicant's motion for rehearing, p. 8)

Tex.R.App.Pro. 74(f) states, "Any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party." I believe that we should grant rehearing on ground number one to reevaluate whether or not applicant preserved his complaint about being forcibly medicated at trial. It would appear to be somewhat incongruous to hold that there was no trial objection if everyone involved agrees that there was an objection at trial. Rehearing should be granted to determine whether the complaint was or was not preserved at trial, and if it was to address the merits of the claim.

Accordingly I respectfully dissent to denying ground one of applicant's motion for rehearing.