In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00151-CR**
**NO. 09-20-00152-CR**
_____

**EX PARTE MICHAEL WILLIAM ALDERS**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 20-03-03636-CR, 20-04-04510-CR**
_____

**MEMORANDUM OPINION**

On appeal, Michael William Alders challenges the trial court's ruling on his applications for pretrial writs of habeas corpus. Alders contends that the trial court placed an unlawful condition precedent to his release on bond that required him to undergo a psychiatric evaluation to determine if he needed medication following a felony theft charge and subsequent retaliation charge. Because Alders has failed to meet his burden of showing the trial court abused its discretion by imposing an unreasonable condition, we affirm the trial court's judgment.

1

## I. Background

The State first charged Alders with felony theft in an amount less than $2500.00 based on allegations that he changed price tags on merchandise at Walmart.[1] A condition of his bond for that offense prohibited Alders from possessing a firearm.

On one occasion while out on bond on the theft charge, law enforcement officers observed Alders with a pistol in his waistband, and "[t]here were things said that led officers to believe that . . . his property was booby trapped." On another occasion, Alders came to the Conroe Police Department parking lot and made a scene where officers again observed him in possession of a firearm, this time, a shotgun in the cab of his truck. Following this incident, the State began the process of seeking to have his bond revoked based on the violation. Thereafter, a third incident occurred at Alders's home and "given the risk[,]" a SWAT team was dispatched. As this incident unfolded, the trial court was notified and revoked Alders's bond. While officers took Alders into custody, Alders threatened the officers as well as their family members.

As a result of the above-described conduct, the State charged Alders with retaliation, and he was "no bonded." Alders then filed applications for writs of

---

[1] The charge was a state jail felony due to Alders's previous theft convictions.

habeas corpus seeking bond and release "because of delay" in both causes. In both applications, he cited the Texas Constitution, Article I, Section 11a.

## A. First Hearing

The trial court held a hearing on April 29, 2020, on the applications for writs of habeas corpus via Zoom. Applicant's counsel did not put on any evidence during this hearing. On the new retaliation charges, Alders was initially held without bond but his attorney argued at the hearing on the habeas application that no evidentiary hearing took place. During the hearing, Alders's attorney represented that Alders had mental health issues that required attention.[2] He also represented that he "believ[ed] Mr. Alders is willing to accept any conditions by the Court to ensure the safety of the community and to ensure his appearance[.]"

The State conceded that a hearing on the retaliation charge did not happen within the statutorily required seven days and that Alders was entitled to a bond on that charge; however, they discussed what they felt would be appropriate conditions of any bond given the retaliation charge and threats he made. The State suggested Alders be sent for inpatient evaluation and treatment, to which the trial court responded that it did not believe it had the authority to have someone committed as a condition of bond. Defense counsel noted that "we would not be opposed -- as a

---

[2] His attorney also explained that Alders suffered from diabetes, recently had surgery, and was suffering from some wound healing complications. At the time of the hearing, the jail housed Alders in the infirmary due to these medical issues.

3

condition of bond to seek mental health counseling within so many days -- a mental health evaluation within so many days." The trial court ordered a competency evaluation and psychological evaluation with a written report in the interest of the Applicant and the interest of the community. The trial court ultimately set bonds in both cases but noted it was not releasing them to the jail until the court was made aware the doctor had visited with Alders and made a recommendation about whether inpatient treatment, follow-up treatment or medication was needed. The court set the theft bond amount at $50,000 and the retaliation bond amount at $100,000. The only objection defense counsel voiced during the first hearing was that he wanted to make sure that certain medical conditions associated with Alders's diabetes were being addressed.

**B. Contents of Dr. Elliott's Report**

On May 8, 2020, Dr. Elliott examined Alders at the jail via video conference and prepared a report of her findings for the court.[3] Dr. Elliott noted that the Applicant's statements "reflect the possibility of a delusional belief structure, such as mistrust of law enforcement, that could further be linked to a mood disorder or psychosis." Relevant diagnoses included "Unspecified Bipolar Disorder" and "Unspecified Personality Disorder[.]" Dr. Elliott further explained that Alders "did

---

[3] Dr. Elliott evaluated Alders because the first court-ordered mental health evaluator was unavailable.

not appear to be impaired to such an extent that he would require inpatient psychiatric treatment[, and] [h]e did not present as an imminent threat to himself or others[.]" However, Dr. Elliot stated that Alders "acknowledged engaging in threats towards others previously and being willing to harm others in the future if necessary, [but] he did not express a specific intent to do so." Dr. Elliott opined that the Applicant

> would likely benefit from therapy services targeting his agitation and response to frustration. *He would also benefit from an updated evaluation by a psychiatrist to determine the benefit of psychiatric medication in addressing his symptoms.* A combination of therapy and medication are often used to effectively treat mood disorders. Such a combination can also be helpful for addressing agitation, appropriate response to anger, and impulsiveness. *Importantly, given his reported dislike of psychiatric medication, he is unlikely to be compliant with medication recommendations.*

(emphasis added.)

**C. Second Hearing**

On May 12, 2020, the trial court entered amended orders in both causes noting that the Applicant was "[n]ot to be released until follow up with a psychiatrist as to whether medication is needed, per Dr. Elliott's rec (sic)." On May 20, 2020, the trial court conducted a second hearing on the applications for writs of habeas corpus via Zoom. During the hearing, the parties and the trial court addressed whether Alders should be held until another doctor could evaluate him based on Dr. Elliott's

5

recommendation that Alders may need to follow-up with a psychiatrist and whether medication might improve his condition.

At this second hearing, Alders took the position that continuing to hold him to address these issues constituted an unlawful condition precedent to release citing *Ex parte Blair*. Alders's counsel also argued that the Constitution mandated bond and prohibited the Court from issuing a condition precedent to release but acknowledged the trial court could impose a reasonable condition upon his release.

The State responded by distinguishing *Ex parte Blair* and contended that case was different because there, a community safety concern did not exist; whereas here, a community safety concern existed that needed to be addressed. The trial judge then explained that the court felt it had a duty to follow Dr. Elliott's conditions, and if it did not, it could be detrimental to the safety of the community and Alders.

Alders requested that the condition precedent of seeing a psychiatrist again before his release be withdrawn and that the court turn it into a condition upon release. Alders was agreeable to seeing a psychiatrist within forty-eight hours and wearing a GPS monitor without home confinement. In response, the State stressed the importance of having Alders evaluated for medication and focused on the threats Alders made against law enforcement officers. The defense reiterated its objection to any condition precedent, noting that it violated the Code of Criminal Procedure's requirements in setting bonds, violated due process and due course of law, violated

the Eighth Amendment because it imposed punishment, and constituted an unwarranted illegal condition based on testimony before the court. Alders also objected based on Texas Constitution Article 1, sections 11(a), (b), and (c). *See* Tex. Const. art. I, §§ 11(a)–(c).

## II. Standard of Review

We generally review a trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013); *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). In doing so, we view the facts in the light most favorable to the trial court's ruling. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We defer to the trial court's findings when the record supports them. *See Washington v. State*, 326 S.W.3d 701, 704 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Ex parte Wheeler*, 203 S.W.3d at 325–26). The defendant seeking habeas corpus relief bears the burden of proving by a preponderance of evidence his entitlement to relief. *Id.* at 706; *see also Ex parte Koons*, No. 09-19-00088-CR, 2019 WL 3938000, at *2 (Tex. App.—Beaumont Aug. 21, 2019, pet. ref'd) (mem. op., not designated for publication). We will not disturb the habeas court's ruling unless the appealing party demonstrates the trial court abused its discretion. *Ex parte Gill*, 413 S.W.3d at 428 (citation omitted).

### III. Analysis

On appeal, Alders contends the "condition requiring Applicant to have a psychiatric evaluation before being released on bond is a condition precedent and as such, is illegal." Texas law permits a trial court to "impose any reasonable condition" on a defendant's bond that is related to the safety of the alleged victim of the offense or related to community safety. *See* Tex. Code Crim. Proc. Ann. art. 17.40.

Alders relies heavily on *Ex parte Blair*, an unpublished opinion from the Dallas Court of Appeals. No. 05-06-01220-CR, 2006 WL 3042137 (Tex. App.—Dallas Oct. 27, 2006, no pet.) (not designated for publication). There, the trial court required the applicant to turn over evidence of his psychological condition and history before he could be released. *See id.* at *2. The appellate court determined that the "condition" as written did not ensure the applicant's bond compliance, because he would not be released until after he completed the condition, which made it a condition precedent to release rather than a condition of release. *See id.* The Dallas Court of Appeals reversed the trial court's order denying habeas relief and remanded it for further proceedings. *See id.*

We don't read the holding of *Ex parte Blair* as being inapposite to the facts before us. In *Ex parte Blair*, the record was devoid of any evidence relating to Blair's mental health and the safety of the victim or community. *See id.* at *1. The court there noted that nothing in the record warranted the requirement that he provide

8

evidence of his psychological condition as "[n]othing in the record there relat[ed] to the mental health of the appellant, the safety of the victim or the community." *Id.* at *2. In contrast, here, the record is replete with such information. The Applicant's attorney acknowledged Alders's mental health issues during the first hearing and did not object to the initial psychological evaluation. Moreover, the record supported that Alders had a history of significant mental health issues, likely suffered from bipolar disorder, received psychiatric treatment in the past. Specifically, the psychologist noted that "he has been diagnosed with bipolar disorder in the past" and "arrest records indicate a pattern of agitation and hostility toward police and others." The psychologist stated, "it appears Mr. Alders experiences symptoms of mental illness, likely a mood disorder, although the exact nature of it is unclear."

The record also established Alders was out on bond for the theft charge when he violated conditions of a previous bond by possessing firearms. Further, the record showed that Alders threatened law enforcement officers when they took him into custody for violating conditions of bond on the theft charge, threatened "to shoot any Conroe PD officer that comes on his property" and claimed to have "booby trapped" his property. Alders admitted making threats while denying a history of following through with violence and told the psychologist "he has not 'had to *yet*.'" (Emphasis added.) Dr. Elliott's report explained that Alders would benefit from a

9

psychiatrist's evaluation to determine whether medication would address his symptoms and help to ensure he complied with the bond conditions after release.[4]

In the second hearing, the trial court explained,

> I believe that the parties at the first hearing were agreeable to the two bond amounts and agreeable to the conditions that were attached to said bonds, and I believe that the Court had a duty to follow the recommendations given by that first doctor. So, that puts us now in a situation, all of us, where [defense counsel] is objecting to those conditions, and I feel that if not followed through, it could be detrimental both to the safety of the community and the safety of Mr. Alders based on what Dr. Elliott has stated.

The trial court relied on the information provided in Dr. Elliott's report when setting the condition, as the court noted in the amended order, "Not to be released until follow up with a psychiatrist as to whether medication is needed, per Dr. Elliott's rec[commendation]."

Viewing the facts in the light most favorable to the trial court's ruling, we conclude the record supports that Alders posed a potential danger to others in the community, and the condition that he undergo further psychiatric evaluation prior to release to determine the necessity of medication was related to ensuring the applicant's bond compliance and community safety. *See* Tex. Code Crim. Proc. Ann. art. 17.40. Importantly, Alders does not contest the necessity of medication or further psychiatric evaluation. He simply argues that the condition should be imposed after

---

[4] Psychologists are not physicians and cannot prescribe medication. Any prescribing of medication would have to be done by a psychiatrist.

his release rather than before. Alders has made no attempt to show how the imposition of this condition was unreasonable or impinged on any constitutional right.[5] Accordingly, Alders has failed to prove his allegations by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995) (explaining that the burden is on the applicant to prove factual allegations by a preponderance of evidence); *Washington*, 326 S.W.3d at 706. We overrule the Appellant's sole issue.

## IV. Conclusion

We hold that Alders failed to meet his burden of establishing that the trial court abused its discretion by imposing the complained-of condition. Viewing the facts in the light most favorable to the trial court's ruling, we conclude that the condition that the Appellant undergo an additional evaluation by a psychiatrist to determine the necessity of medication prior to his release did not constitute an abuse

---

[5] While he raised constitutional objections in the trial court, apart from briefly mentioning them in his factual background, Alders failed to brief those issues on appeal or explain how the trial court's condition infringed upon any constitutional protection. Therefore, we do not address them. *See Wolfe v. State*, 509 S.W.3d 325, 345 (Tex. Crim. App. 2017) (citation omitted) (noting that if an appellant narrows their argument on appeal to address only a particular basis for disturbing the trial court's ruling, "it is not for the appellate court to scour the record in search of other possible bases for reversing the trial court's ruling"). Instead, he has focused his complaint on a non-constitutional issue and relied on *Ex parte Blair*, No. 05-06-01220-CR, 2006 WL 3042137 (Tex. App.—Dallas Oct. 27, 2006, no pet.) (not designated for publication).

of discretion, and we limit our holding to the particular facts of the case before us.

We affirm the trial court's orders.

       AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 31, 2020
Opinion Delivered September 30, 2020
Do Not Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.

12